GRIFFIN v. RHOTON.

Opinion delivered December 16, 1907.

1. PROSECUTING ATTORNEY—LIMIT OF SALARY.—A prosecuting attorney is an officer of the State within art. 19, § 23, of the Constitution limiting the salary, fees and perquisities of State, county, city and town officers to $5,000 net profits per annum in par funds. (Page 93.)

2. CONSTITUTION—LEGISLATIVE CONSTRUCTION.—It is only where a constitutional provision is ambiguous that the courts are justified in considering a construction placed upon it by the Legislature. (Page 95.)

3. SAME—PROVISION AS TO OFFICERS' SALARIES NOT SELF-EXECUTING.—The provision of the Constitution (art. 19, § 23) limiting the salary of State and other officers to $5,000 "net profits per annum in par funds" and providing that "any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall be hereafter directed by appropriate legislation," is not self-executing, because there is no means provided whereby the "net profits" of the office of prosecuting attorney may be ascertained, and because no direction is given to him where he shall pay the excess. (Page 95.)

4. PARTIES—SUIT TO REQUIRE OFFICER TO REFUND EXCESSIVE SALARY.—A citizen and taxpayer may bring a suit to compel a State officer to refund the excess of his salary or fees over the constitutional limit thereto, after the Attorney General has refused to do so. (Page 99.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; affirmed.

*Baldy Vinson,* for appellant.

1. Under the Constitution the maximum salary allowed any officer in this State is $5,000. Const. (1874), art. 19, § 23. Under the first constitution of the State, the prosecuting attorney was ranked as a State officer. Art. 6, § 13, Const. 1836. In the matter of impeachment he was and is classed as a State officer. Art. 4, § 25, Const. 1861; Art. 4, § 24, Const.

1874. Likewise, in the matter of payment of salaries. Gantt's Digest, § § 5373-5398; art. 19, § 11, Const. 1874. The prosecuting attorney is, therefore, in the matter of payment of his salary, a State officer, and, in so far as pertains to his duties, a county officer; and the fact that the term "district office" does not appear in the clause of the Constitution limiting salaries (art. 19, § 23, Const.) does not argue that he is exempt from its provisions. This section of the Constitution, taken in connection with art. 16, § 4, *Id.,* clearly shows that the office of prosecuting attorney is included in the limitation of salary, fees and perquisites to a maximum of $5,000.

2. The constitutional provision limiting the salary to five thousand dollars is self-executing. A general maximum of salary and fees is fixed for "all officers *in the State,* and no greater salary or fee than that *fixed by law* shall be paid to *any officer, employee, or other person.*" Art. 19, § 23, and art. 16, § 4, Const. Prohibitive and restrictive provisions in constitutions are self-executing, and may be enforced independent of legislative action. 26 Am. Rep. 90; 60 Ark. 325; 11 Pac. 27; 75 Ga. 782; 124 Ill. 655; 73 Ky. 725; 24 La. Ann. 214; 7 How. (Miss.), 14; 83 Mo. 488; 4 Neb. 216; 50 N. W. 632; 4 Hump. (Tenn.), 259. See also, 55 Ala. 332; 7 Mich. 488; 67 N. C. 293; 31 Tex. 677; 22 S. W. 552. The statutes also, in conformity with the constitutional provision, fix the minimum salary at $5,000. Kirby's Digest, § § 3543-3554. And it is immaterial that the prosecuting attorney is not specially mentioned, nor the term "district officer" used, in these sections, since a prosecuting attorney certainly comes within the list of officers, "or other persons" in the employ of the State. That, as relates to his duties, a prosecuting attorney is a county officer, see Kirby's Digest, § 6387; Stat. Vermont, 1894, § 57; 134 N. Y. 1; 31 N. E. 322; 95 Ia. 410; 64 N. W. 290.

3. Since the prosecuting attorney in the matter of the payment of his salary is classed as a State officer, and all other State officers are limited to a maximum per annum compensation of $5,000 and their salaries are actually fixed at amounts less than that, to permit him to receive a greater compensation than the maximum fixed would be a discrimination in favor of the prosecuting attorney not contemplated by the framers of

the Constitution, and such a construction is contrary both to the meaning and spirit of the law. Art. 15, § 6, Const. 1868. He could receive no more than the maximum yearly compensation. 25 Ark. 235; Kirby's Digest, § 1458; 71 N. H. 96; 32 Mo. 446; 45 N. Y. 1018; 23 Mont. 351; 63 Pac. 857; 8 Mont. 396. And must pay the excess into the proper treasury. Kirby's Digest, § 3549.

4. Equity has jurisdiction to compel an accounting and a restitution of the excess, and appellant as a citizen and taxpayer of the county has the right to maintain the suit. Art. 16, § 13, Const.; Kirby's Digest, § 5485; *Id.* 7199; 72 Ind. 336; 3 Cent. Dict. "Exaction"; 12 Me. 94; 2 Am. Dec. 291; 1 Cent. Digest, col. 594, § 63 (a); *Id.* col. 536, § 13 (a); 72 Ill. 364; 45 Ga. 163.

*W. L. Terry* and *De E. Bradshaw,* for appellee.

1. A prosecuting attorney is not an "officer of the State," in the sense those words are used in art. 19, § 23, Const.; neither is he a county officer, since such an officer must reside in the county in which he holds office. Art. 19, § 4, Const. As to who are county officers, see art. 7, § 46. District officers are clearly recognized by the Constitution. Art. 19, § 4, *supra;* art. 7, § 24; Schedule, § 3, Const.; Amendment No. 3, Const. And the Schedule to the Constitution also indicates who are State officers. Schedule, § 17. The power and authority of the prosecuting attorney are restricted to the district in which he is elected. The words "officer of the State" refer to State officers proper. If the framers of the Constitution had intended that expression to be understood in the sense of "officers under authority of the State," or "officers in the State," they would not have used the expresssion "nor of any county," etc. Supporting the view that he is neither a State nor a county, but a district officer, see, 46 Ind. 355; 135 Mo. 325; 67 Pac. 287; 100 Ill. 94; 57 S. W. 35; 42 S. W. 534; 44 Mich. 89; 54 Ala. 226; 90 Mo. 231. The Constitution, art. 8, § 52, names the county court as the tribunal for contesting the election of a county officer, while the statute provides that a contest of election of a prosecuting attorney shall be in the circuit court. Kirby's Digest, § 2856. See also, *Id.,* § 2860.

2. If the constiutional provision relied on by appellant is applicable to the office of prosecuting attorney, it is not self-executing. Legislative construction, while not binding upon the court, is at least persuasive, and that the Legislature has not judged the provision to be self-executing is shown by the act passed at its first session after the adoption of the Constitution. Kirby's Digest, § § 3543-3554. No method is there provided whereby he could account to any one for fees collected by him. Cooley's Const. Lim. (4 Ed.), 101; *Id.* 110; 24 Cal. 539; 32 Ark. 494; 67 Mo. 256; 34 Ark. 331; 32 Ark. 26; 60 Ark. 332; 65 Ark. 315; 52 Ala. 231; 24 La. An. 214; 10 Fed. 497.

3. Appellant was without authority or legal capacity either as a citizen or taxpayer to maintain this suit. (a) The excess over $5,000, if any, was not an illegal exaction, within the meaning of art. 16, § 13, Const. The prosecuting attorney's fee provided for in case of conviction is not an illegal exaction, even against the party who paid it. (b) To maintain a suit under the foregoing provision, the plaintiff must show some illegal exaction affecting him in common with all others in whose behalf the suit is brought. Kirby's Digest, § 990. See also, *Id.,* § § 6392, 6403, 7162 *et seq.,* 7173. (c) Section 5485, Kirby's Digest, has no application to an action for recovery of an excess of fees due the State or county, that section having reference only to tax levied in a city or town without authority of law. Section 7199, Kirby's Digest, does not apply. See sections 7197-8. (d) A bill for an acounting must be brought either in the name of the proper officer or trustee or in that of the party beneficially interested in the accounting to be had. Appellant is neither. If the excess should go into the State treasury, the Attorney General is the proper officer to bring the suit, which should be in the name of the State. If it should go into the county treasury, the suit should be brought in the name of the State for the use of the county. Kirby's Digest, § 990. See also *Id.,* § § 5999, 6062; 7 Cowen, 342; 14 *Id.* 344; 16 Ga. 119; 10 Vt. 570; 2 Ala. 406; 10 Fed. 425. (e) If prosecuting attorney is a county officer, he should have been proceeded against, if liable at all, under § 3553, Kirby's Digest. The circuit court would need no petition nor motion to call forth a mandamus. Kirby's Digest, § 5158; 31 Ark. 264; 30 Ark. 607. See also, 14 Ark. 172.

McCulloch, J.   Section 23, art. 19, of the Constitution of this State reads as follows: "No officer of this State, nor of any county, city or town shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

Appellee is the prosecuting attorney of the sixth judicial circuit, composed of Pulaski and Perry counties, and appellant, a citizen and taxpayer of Pulaski County, seeks, by suit in chancery, to compel appellee to account for and pay into the State treasury, and the treasuries of said counties proportionately, the fees and emoluments of his office in excess of five thousand dollars.

The chancellor sustained a demurrer to the complaint, and defendant appealed.

Three questions are presented in the case, which will be considered in the order named:

First:   Does the constitutional provision in question apply to the office of prosecuting attorney?

Second:   Is the provision of the Constitution self-executing and enforcible without further legislation on the subject?

Third:   Has appellant the legal right, as a citizen and taxpayer of the county, to maintain the action?

This court is of the opinion that the constitutional provision in question applies to the office of prosecuting attorney.   It is a State office within the meaning of this provision.   A prosecuting attorney is, according to the requirements of the Constitution (section 25, art. 7), elected by the qualified electors of the judicial circuit for which he is to serve, and must be a resident of that circuit.   Nevertheless he is elected as an officer of the State.   He draws a salary from the State as one of its officers, which is provided for in a section of the Constitution grouping together the other State officers (section 11, art. 19), and he is the representative of the State in all criminal prosecutions in his circuit.   It is true that he is, by statute, made the representative of each county in his circuit in all litigation in which the counties are concerned.   Some of the emoluments

of his office come from the counties, the statute providing that in certain contingencies the counties shall pay the costs of criminal prosecutions. Still he is an officer of the State, and represents the several counties in his district only as political subdivisions of the State.

We feel quite positive that the framers of the Constitution meant to include all officers within the inhibition prescribed with reference to salary and emoluments of office, and we conclude that the language in which the provision is couched is susceptible of no other reasonable interpretation. There is no substantial reason why the office of prosecuting attorney shall be treated as exceptional, when we are mindful of the language of the Constitution limiting the amount of his compensation to $5,000 *"net profits per annum in par funds."* If there was a limitation upon the gross amount of salary and fees, exceptional reasons in favor of the prosecuting attorneys might be discovered on account of the extraordinary expenses of that officer in discharging his duties; but where the provision applies only to *net profits* of the office, then the force of all reason for exception is lost. It is true that a prosecuting attorney performs many services for which he receives no compensation at all. But the constitution makers manifestly intended to say that the sum of five thousand net salary or fees in par funds is sufficient compensation per annum for any public officer in this State, however onerous the duties of his office may be.

Many decisions of other courts, thought to bear more or less upon the question under consideration, are called to our attention, but they are of little value to us as precedents, for the reason that they are based upon dissimilar constitutional provisions, and arise upon somewhat different questions than those presented here. After all has been said, it remains purely a question of interpretation of the particular language used by the framers of our Constitution—not what the framers meant but what the language means—and in the performance of that task we receive little aid from precedents other than statements of general rules of construction.

It is insisted that the first Legislature which convened after the adoption of the Constitution of 1874, and which was composed of many members of the convention who dominated its

purposes, by passing a statute (act February 1, 1875) carrying out this provision as to other officers, construed it as not includ· ing the office of prosecuting attorney, and that we should follow that legislative construction. The rule permitting the consideration by the courts, in construing constitutional provisions, of legislative constructions of the same provisions has been frequently approved by this court. *State* v. *Sorrels,* 15 Ark. 675; *Vahlberg* v. *Keaton,* 51 Ark. 534; Ex parte *Reynolds,* 52 Ark. 330; *Sumpter* v. *Duffie,* 80 Ark. 369. But as was said by Chief Justice COCKRILL in Ex parte *Reynolds, supra,* such matters are not entitled to controlling weight. It it only when an examination of the Constitution leaves a doubt that the judges are warranted in looking to these extraneous matters for aid.

Is the provision in question self-executing?

Judge Cooley laid down the following general rule for determining whether or not such provisions are self-executing: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is· not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." Cooley's Const. Lim. (7th Ed.), p. 121.

The same learned author in further comment on the subject says: "But, although none of the provisions of a constitution are to be looked upon as immaterial or merely advisory, there are some which, from the nature of the case, are as incapable of compulsory enforcement, as are directory provisions in general. The reason is that, while the purpose may be to establish rights or to impose duties, they do not in and of themselves constitute a sufficient rule by means of which such right may be protected or such duty enforced. In such cases, before the constitutional provision can be made ·effectual, supplemental legislation must be had; and the provision may be in its nature mandatory to the Legislature to enact the needful legislation, though back of it there lies no authority to enforce the command." P. 119.

This court has in several cases passed upon the question

whether or not certain provisions of the Constitution of the State are self-executing.

The Constitution of 1868 contained a provision that "no right of way shall be apportioned to the use of any corporation until full compensation therefor shall be first made in money, * * * which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law." In the case of *Cairo & F. Rd. Co.* v. *Trout,* 32 Ark. 17, this court held that the latter portion of the above provision was not self-executing.

*Jones* v. *Jarman,* 34 Ark. 323, was an action by a creditor of a corporation to hold stockholders liable for its debts. The corporation was formed and the debt incurred under the Constitution of 1868, which contained the following provision: "Dues from corporations shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but, in all cases, each stockholder shall be liable over and above the stock by him or her owned, to a further sum, at least equal in amount to such stock." The court decided that the clause was self-executing to the extent of the minimum liability prescribed by it. The Legislature had enacted appropriate legislation putting into force other parts of the same section of the Constitution with reference to the formation of corporations, but omitted any provision concerning the liability of stockholders. Chief Justice ENGLISH, in delivering the opinion of the court, said: "We have come to the conclusion that the clause of section 48, article 5, of the Constitution of 1868— 'but, in all cases, each stockholder shall be liable over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum at least equal in amount to such stock'—entered into and formed part of the act under which the corporation in question was organized; and that appellants, by becoming stockholders of the corporation, assumed the liability imposed by this provisions of the Constitution; and that, though the act fails to prescribe remedies for creditors of corporations formed under it, the liability of stockholders may be enforced by the proper judicial tribunals in accordance with settled principles of law. A different conclusion would force us to the necessity of declaring the act unconstitutional and

void, and that associations organized under it are not corporations."

This court in *Railway Company* v. *Fire Association,* 60 Ark. 325, held that the provision in the Constitution of 1874 that "no foreign corporation shall do business in this State except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served," is not self-executing.

The Supreme Court of Missouri in *Fusz* v. *Spaunhorst,* 67 Mo. 256, an action to enforce civil liability against officers of a corporation, held that the following provision of the Constitution was not self-executing: "It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances; and any such officer, agent or manager shall be individually responsible for such deposits so received, and all such debts so created with his assent."

The California court held that the following provision was not self-executing, and was, without the aid of legislation, inoperative: "Each stockholder of a corporation, or joint stock association, shall be individually and personally liable for his proportion of all its debts and liabilities." *French* v. *Teschemaker,* 24 Cal. 539.

These and other cases which might be cited serve only as illustrations of the various applications of the doctrine. But, after all, a decision of the question must depend upon a construction of the particular provision under consideration.

There is a strong implication from the concluding phrase of the provision in question, "as shall hereafter be directed by appropriate legislation," that the framers of the Constitution did not mean it to be self-executing, but intended that the whole provision should be put into force by appropriate legislation. This is greatly strengthened by a consideration of the general and indeterminate character of the language employed.

In the first place the provision for the payment of the excess over $5,000 "into the State, county, city or town treasury"

is, at least so far as the office of prosecuting attorney is concerned, too indefinite to be properly enforced without legislation. The language, standing alone, would mean that all State officers shall pay the excess into the State treasury and county officers into the county treasury; yet, when we remember the source whence the fees of a prosecuting attorney come, the language is too general to warrant a conclusion that so unjust a disposition of the excess in his case as payment into the State treasury was intended. As is well said by learned counsel for appellant, probably ninety per cent. of fees in felony convictions and fifty per cent. of fees for convictions for misdemeanors are paid to the prosecuting attorney by the counties of their respective districts. The State pays only a small part of that officer's compensation—the maximum salary to be paid by the State is fixed at $400 in the Constitution. We know that the net emoluments of the prosecuting attorneys in but few of the circuits, especially at the time of the adoption of the Constitution, were in excess of the maximum amount named; yet, if we give the provision in question a literal interpretation, and hold it to be self-executing, it would require the excessive fees gathered by some of the prosecuting attorneys from the counties composing their circuits to be paid into the State treasury to become a part of the common funds of the State. We do not say that the Legislature cannot prescribe such a disposition of the surplus funds, however unjust it may appear to be, in carrying out the constitutional provision; but we do say that the apparent injustice of such a disposition of the funds affords much reason for not ascribing such a meaning to the general form of expression employed.

In the next place, the words "net profits per annum in par funds," when applied to emoluments of office, are so indefinite that it would be extremely difficult, if not impossible, to judicially determine, without legislation on the subject, what are "net profits * * * in par funds." What basis should the court adopt in ascertaining what are net profits of the office? What expenses are to be deducted; and what tribunal is to pass upon the accounts of the prosecuting attorney, ascertain what his legitimate expenses have been, and fix the amount which he should pay into the treasury? This is a matter easy of solution

for a legislative body, but not for tribunals exercising purely judicial functions, unless the Legislature first provides a basis for determining what the profits of the office are. Of course, if we should reach the conclusion that the provision in question is self-executing, then it would devolve upon the courts, in the absence of legislation on the subject, to work out, in as nearly an approximately just method as possible, what the expenses and net profits of this office are, but the almost insurmountable difficulties in the way of doing it without legislation afford the strongest reason for concluding that the provision was not intended to be self-executing.

We are of the opinion that the provision is not self-executing, and that it is inoperative without legislation putting it in force.

It is argued with much force that non-action on the part the Legislature is equivalent to affirmative legislation permitting the retention of emoluments in excess of $5,000 in violation of the plain mandate of the Constitution, and that that affords conclusive reason for holding the provision to be self-executing. This argument is answered by the decisions of this court holding that the constitutional prohibition against foreign corporations doing business in the State except on certain terms was not self-executing. There non-action for a time on the part of the Legislature was equivalent to permitting such corporations to do business here without obeying the mandate of the Constitution.

We have not deemed it necessary to discuss, at any length, the question of appellant's right to maintain this suit. His right to maintain it depends upon whether or not the provision of the Constitution is self-executing. If we had reached the conclusion that the provision was self-executing, then a majority of the judges are of the opinion that, inasmuch as there is no method expressly pointed out by the Constitution for enforcing the provision, a citizen and taxpayer could bring suit to require obedience to it, after the refusal of the Attorney General to do so.

Affirmed.

BATTLE, J., concurs in the judgment, and in all of the opinion except that part holding that appellant would be entitled to maintain the suit, if the provision in question of the Constitution was held to be self-executing. He expressed no opinion on that subject.

HART, J., disqualified.

HILL, C. J., (dissenting.) I agree that a prosecuting attorney is an "officer of this State," within the meaning of sec. 23, art. 19, of the Constitution. I agree that a taxpayer may maintain suit to compel a delinquent officer to account for fees in excess of the constitutional limit when the Attorney General refuses to act, unnecessarily delays action, or is disqualified from acting; but I do not agree that said clause of the Constitution is not self-executing and needs legislation to make it effective.

The clause reads as follows: "No officer of this State, nor of any county, city or town shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation." Sec. 23, art. 19, Constitution.

That the Legislature can render this clause more effective than at present, and prescribe a method of enforcement and punishment for failure to obey it, I readily concede; but that a failure to prescribe a method of enforcement has defeated obedience to this plain constitutional mandate I do not regard as a sound principle of constitutional construction.

An officer of the State takes an oath to support the Constitution; that Constitution says that he shall not receive for salary, fees or perquisites more than $5,000 net profits per annum in par funds, and that any and all sums in excess of this amount shall be paid into the State treasury.

Because the Legislature has not required monthly, quarterly or annual statements and prescribed punishment for failure to comply with this provision, is the Constitution less binding on the conscience of the officer? If binding upon him, and he fails to obey it, is the State remediless? Is it unenforceable in a proper suit by proper parties in a court having jurisdiction to

adjust and settle the account? To my mind the answers to these questions are self-evident.

I fail to see the injustice which the majority see of paying this excess into the State treasury, instead of distributing it to the counties where derived. There is less injustice in the State receiving it than the officer retaining it when the Constitution forbids him to do so.

This court in *Jones* v. *Jarman,* 34 Ark. 323, approved this statement from Judge Cooley: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which these principles may be given the force of law."

The constitutional provision in question lays down no mere abstract principle to be worked out by legislation, but it lays down a very concrete limit to salaries, and prescribes where the excess shall be paid.

The Attorney General, or, on his default, a taxpayer, certainly ought not to be denied the right to enforce this constitutional provision against a State officer who receives more than the legal limit of fees and fails or refuses to turn over to the State such excess. To the extent of the excess the sum received by him is the State's money illegally held by him. Why the Attorney General (or in proper case a taxpayer) cannot compel him to pay it over to the State, when the Attorney General or taxpayer could unquestionably prevent a like sum being taken from the State treasury, involves a distinction I fail to see.